UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIONEL CHAN,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, *et al.*,<br><br>Respondents. | No. 1:26-cv-11726-RGS |

**RESPONDENTS' RESPONSE TO PETITIONER'S HABEAS PETITION**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, submit this opposition to Petitioner Lionel Chan's Petition for Writ of Habeas Corpus. ECF No. 1. Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254.[1]

**INTRODUCTION**

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c)(3). Petitioner fails to carry his burden to demonstrate that his detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Immigration and Nationality Act ("INA"), its implementing regulations, or the Constitution, and as such, this Petition must be denied.

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *see also Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

## BACKGROUND

### A. Petitioner's Immigration and Criminal History.

Petitioner is a native and citizen of Malaysia but is a lawful permanent resident of the United States. ECF No. 1-3 at 3; ECF No. 1, ¶ 29.[2] On May 28, 2021, Petitioner pled guilty and was convicted of conspiracy to violate the Arms Export Control Act, in violation of 18 U.S.C. § 371 and 22 U.S.C. § 2778, and sentenced to 8 months of incarceration. *Id.*; ECF No. 1, ¶ 32. On or about March 14, 2022, ICE issued Petitioner a Form I-286, Notice Custody Determination, indicating that ICE determined he would remain detained. Exhibit 1, Form I-286, dated March 14, 2022. Based on the aforementioned conviction, the agency charged Petitioner with removability under 8 U.S.C. § 1227(a)(4)(A)(i). *Id.* at 4; *see* ECF No. 1, ¶ 35.

On March 28, 2022, an Immigration Judge conducted a custody redetermination hearing, pursuant to *Matter of Joseph*[3], and concluded that the agency was substantially unlikely to prevail on the 8 U.S.C. § 1227(a)(4)(A)(i) charge. ECF No. 1, ¶¶ 36-37; ECF No. 1-3 at 3-4. Per the IJ's decision, ICE released Petitioner on a $15,000 bond. ECF No. 1, ¶ 38. On or about November 20,

---

[2] While Respondents do not contest some of the facts relayed in the Petition and exhibits, and therefore rely on those facts in this response, this should not be misconstrued as a concession to all of the facts alleged in the Petition.

[3] 22 I&N Dec. 799 (BIA 1999) (holding (1) For purposes of determining the custody conditions of a LPR under 8 U.S.C. § 1226 8 C.F.R. § 1003.19(h)(2)(ii) (1999), the LPR will not be considered "properly included" in a mandatory detention category when an IJ or BIA finds, on the basis of the bond record as a whole, that it is substantially unlikely that the agency will prevail on the charge of removability. (2) Although a conviction document may provide the Service with sufficient reason to believe that an alien is removable under one of the mandatory detention grounds for purposes of charging the alien and making an initial custody determination, neither the IJ or BIA are bound by such decision. (3) When an Immigration Judge's removal decision precedes the determination, pursuant to 8 C.F.R. § 10033.19(h)(2)(ii), whether an alien is "properly included" in a mandatory detention category, the removal decision may properly form the basis for that determination.

2024, the IJ sustained the 8 U.S.C. § 1227(a)(4)(A)(i) charge against Petitioner. ECF No. 1, ¶ 41. On June 10, 2025, the BIA sustained the agency's appeal as it determined that the agency was substantially likely to prevail on the 8 U.S.C. § 1227(a)(4)(A)(i) charge, vacated the IJ's bond decision, and ordered that Petitioner be detained on no bond. ECF No. 1-3 at 6.

On or about April 10, 2026, ICE encountered and arrested Petitioner on a previously issued Form I-200, Warrant of Arrest for Alien. Exhibit 2, Form I-200, dated February 6, 2026. On this day, ICE also issued Petitioner a Form I-286, Notice of Custody Determination, where he requested that an IJ review the agency's decision to detain him. Exhibit 3, Form I-286, dated April 10, 2026. ICE subsequently transferred Petitioner to Plymouth County Correctional Facility, in Plymouth Massachusetts. *See* ECF No. 1, ¶ 50. The Immigration Court scheduled a custody redetermination hearing for Petitioner to occur on April 27, 2026, at 8:30 AM. Exhibit 4, Notice of Hearing.

**B. Petitioner's Habeas Petition.**

Petitioner filed the instant petition on April 14, 2026. ECF No. 1. Petitioner argues that his detention under 8 C.F.R. § 1003.19(h)(2)(i)(C) is ultra vires in comparison to 8 U.S.C. § 1226(c) and, therefore, violates the statute. ECF No. 1, Count I. Petitioner also claims that his detention violates his procedural and substantive due process rights under the Fifth Amendment. *Id.*, Count II. Petitioner also asks for declaratory relief and for this Court to order his release. *Id.*, Count III and PRAYER FOR RELIEF.

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions. To warrant

a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## ARGUMENT

### A. Relevant Statutory and Regulatory Framework

#### 1. Immigration Detention Pursuant to 8 U.S.C. § 1226

The Immigration Nationality Act ("INA") distinguishes between detention of aliens still in removal proceedings and aliens who have received final orders of removal. Relevant here, 8 U.S.C. § 1226 governs the detention of aliens already present in the country prior to their final orders of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1226 dictates the process of arresting and detaining the group of aliens pending their removal. *Jennings*, 583 U.S. at 288. Section 1226 sets forth two categories of aliens. *Id.* at 287. *First*, § 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and "*may continue* to detain" the arrested alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C § 1226(a)(1); *id*. at § 1226(a)(2) ("Except as provided in subsection (c) of this section," the Attorney General "*may* release" an alien detained under § 1226(a) "on . . . bond" or "conditional parole") (emphasis added).

Aliens detained under § 1226(a) are entitled to bond hearings "at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Release depends on "the alien demonstrate[ing] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

*Second*, Section 1226(c) carves out a statutory category of aliens who may not be released under section 1226(a). *Jennings*, 583 U.S. at 289. Under section 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c); *Jennings*, 583 U.S. at 289. Specifically, section 1226(c) authorizes the detention of aliens with certain criminal convictions or terrorism connections during the pendency of their removal proceedings. *See* 8 U.S.C. § 1226(c). The Attorney General may release alien in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

**2. Detention Review Authority**

Although the INA generally refers to the Attorney General, in 2002, Congress transferred immigration law enforcement functions from the Department of Justice ("DOJ") and the Attorney General to the newly formed DHS and the Secretary of Homeland Security ("Secretary") under the Homeland Security Act of 2002 ("Act"), Pub. L. No. 107-296, § 471 116 Stat. 2135 (2002). The Homeland Security Act of 2002 also abolished the legacy Immigration and Naturalization Service ("INS"). Pub. L. 107-296 § 471(a), 116 Stat. 2205 (2002). Before its dissolution, INS's immigration enforcement responsibilities, including its "intelligence," "investigations," and "inspections" programs, were transferred to DHS. 6 U.S.C. § 251. Further, under the Act, ICE was established, and a portion of INS's criminal investigative responsibilities were assigned to ICE. 6 U.S.C. §§ 251, 252(a)(3)(A)(i); DHS Delegation No. 7030.2 (ICE)). Specifically, ICE, as part of

the DHS, assumed the detention, removal, enforcement, and investigative functions of the INS. *See* 6 U.S.C. § 252.

Despite this aspect of reorganization, the Executive Office of Immigration Review ("EOIR") — remaining under the umbrella of the DOJ — retained its role in administering immigration courts. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003); *see also* 8 C.F.R. § 1003; *see also* https://justice.gov/eoir/about-office. Specifically, under delegated authority from the Attorney General, EOIR interprets and administers federal immigration laws by conducting immigration court proceedings, appellate reviews, and administrative hearings. *See* https://justice.gov/eoir/about-office. EOIR consists of three components including the Office of the Chief Immigration Judge, which is responsible for managing the immigration courts located throughout the United States, where immigration judges adjudicate individual cases. *Id.*

Relevant here, when an alien is detained under Section 1226(a), an ICE officer "makes an initial custody determination and may allow the alien's release on bond." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021); *see* 8 C.F.R. § 236.1(c)(8)). In most cases, an alien detained under section 1226(a) can appeal DHS's initial custody determination by requesting a bond redetermination hearing before an immigration judge any time before the issuance of an administratively final order of removal. 8 C.F.R. § 236.1(d); *see also* 8 C.F.R. § 1003.19(c) (granting immigration judges jurisdiction to review custody and bond determinations).[4] The delegation to immigration judges provides:

---

[4] Delegation of the Secretary's authority to employees of another agency is permissible under 8 U.S.C. § 1103(a)(6), which authorizes the Secretary to "confer or impose upon any employee of the United States, with the consent of the head of the Department or other independent establishment under whose jurisdiction the employee is serving, any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder upon officers or employees of the Service."

> After an initial custody determination by the district director, including the setting of a bond, the respondent [alien] may, at any time before a [ removal] order . . . becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and *except as otherwise provided in this chapter*, the immigration judge is authorized to exercise the authority in section 236 of the Act . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter[.]

8 C.F.R. § 236.1(d)(1) (emphasis added).

Despite this seemingly broad delegation of detention review authority, DHS limited immigration judges from reviewing ICE's bond determinations in certain circumstances. Specifically,

> An immigration judge may not exercise the authority provided in this section, and the review process described in paragraph (d) of this section shall not apply, with respect to any alien beyond the custody jurisdiction of the immigration judge as provided in § 1003.19(h) of this chapter.

8 C.F.R. § 236.1(c)(11). Under section 1003.19(h), an immigration judge "may not redetermine the custody imposed by [ICE] with respect to . . . [aliens] described in [8 U.S.C. § 1227(a)(4).]" 8 C.F.R. § 1003.19(h)(2)(i)(C).

An alien described in section 1227(a)(4) who is denied bond by ICE is not without recourse. The alien may "seek[] a redetermination of custody conditions by the Service in accordance with [8 C.F.R. § 1236.1]."[5] 8 C.F.R. § 1003.19(h)(2)(ii). The alien may also "seek[] a determination by an immigration judge that the alien is not properly included within" 8 U.S.C. § 1227(a)(4). *Id.*

---

[5] Section 1236.1 mirrors the language of section 236.1. Subsection (c)(8) of both regulations provides that an ICE officer may release an alien who "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."

**B. Petitioner May Not Challenge his Detention Authority in Habeas.**

Habeas corpus "is at its core a remedy for unlawful executive detention." *Thuraissigiam*, 591 U.S. at 119. Claims for relief "outside the 'core' of habeas may not be pursued through habeas." *Id*. (citing *Skinner v. Switzer*, 562 U.S. 521, 525 (2011); *see Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *Preiser v. Rodriguez*, 411 U.S. 475, 487-89 (1973). Petitioner here, as a lawful permanent resident who did not commit a crime covered by 8 U.S.C. § 1226(c), is detained under DHS's general discretionary authority at 8 U.S.C. § 1226(a). *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021).

Petitioner does not dispute that his detention is lawful under section 1226(a), in fact he asks this Court to affirm just that. ECF No. ¶¶ 5, 60, 71. Instead, Petitioner alleges, through a misreading of 8 C.F.R. § 1003.19(h)(2)(i)(C), that the BIA's decision demonstrates ICE detained Petitioner under Section 1226(c). *Id*. at Count I. Petitioner uses the Writ of Habeas Corpus to ask this Court only to change the statutory authority under which he is being detained. Such relief, were it correct, would not lead to Petitioner's release, making habeas an improper vehicle for Petitioner's claims. *Thuraissigiam*, 591 U.S. at 119. As explained, Petitioner received the bond determination he seeks, which the BIA has concluded that per the regulation he should be brought back into custody, which is what ICE did.

**1. Petitioner received a section 1226(a) bond determination.**

At the outset of his detention on or about March 14, 2022, an ICE officer determined that Petitioner would be detained. Exhibit 1. Typically, under section 1226(a) and implementing regulations, a detainee has the opportunity to seek a re-determination of ICE's bond denial by an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19. Here, Petitioner requested such a redetermination of ICE's custody determination. ECF No. 1, ¶¶ 36-37; ECF No. 1-3 at 3-4. Per the

IJ's bond order, ICE released Petitioner on a $15,000 bond. ECF No. 1, ¶ 38. On or about November 20, 2024, the IJ sustained the 8 U.S.C. § 1227(a)(4)(A)(i) charge against Petitioner. ECF No. 1, ¶ 41. On June 10, 2025, the BIA sustained the agency's appeal as it determined that the agency was substantially likely to prevail on the 8 U.S.C. § 1227(a)(4)(A)(i) charge, vacated the IJ's bond decision, and ordered that Petitioner be detained on no bond. ECF No. 1-3 at 6.

Nothing in the BIA's opinion suggests that ICE detained him under 8 U.S.C. § 1226(c) or that the BIA applied that section. Per the regulations, Petitioner also has additional recourse if he believes there is a material change in circumstances. *See* 8 C.F.R. § 236.1(d)(3); 8 C.F.R. § 1003.19(e). Petitioner belabors that he is not subject to 8 U.S.C. § 1226(c) but does not meaningfully challenge the applicability of 8 C.F.R. § 1003.19(h)(2)(i)(C). *See* ECF No. 1.

**2. The BIA did not find that Petitioner is subject to 8 U.S.C. § 1226(c).**

Petitioner's argument that the regulation is ultra vires because it expands past 8 U.S.C. § 1226(c) is mistaken on multiple points. ECF No. 1, ¶¶ 51-58. It appears Petitioner takes the BIA's usage of "mandatory custody" at face value; but he overlooks that the BIA held that the agency was substantially likely to prevail on the 8 U.S.C. § 1227(a)(4)(A)(i) charge, citing to the regulation and not section 1226(c), to reverse the underlying decision. *See* ECF No. 1-3. Nor is it correct to say that 8 C.F.R § 1003.19(h)(2)(i)(C) "implements" 8 U.S.C. § 1226(c)(1)(4). ECF No. 1, ¶¶ 24, 54. Rather, the regulation is authorized more broadly by a number of statutes, including the whole of section 1226, which necessarily includes section 1226(a).[6]

[6] *See* Procedures for the Detention and Release of Criminal Aliens by the Immigration and Naturalization Service and for Custody Redeterminations by the Executive Office for Immigration Review, 63 Fed. Reg. 27,441, 27,448 (May 19, 1998) (modifying former 8 C.F.R. § 3.19(h), later renumbered 8 C.F.R. § 1003.19(h)).

Specifically, as explained above, 8 C.F.R. § 236.1(c)(8) provides guidance for the discretionary release of aliens detained under 8 U.S.C. § 1226(a)(2). Section 236.1(d) grants an immigration judge authority to review and modify ICE's bond decisions for such aliens, *except* section 236.1(c)(11) strips that authority for aliens subject to 8 C.F.R § 1003.19(h). Petitioner is subject to section 1003.19(h)(2)(i)(C) because he was charged as removable under 8 U.S.C. § 1227(a)(4)(A)(i). Section 1226(c) is simply not implicated. *See Barajas Farias v. Garland*, *et al.*, No. 0:24-cv-04366 (MJD/LIB) (D. Minn. Dec. 6, 2024) slip op. at *5 ("Again, § 1226(a) does not delegate authority directly to immigration judges, and the effect of [8 C.F.R. § 1003.19(h)(2)(i)(C)] in this case is to *negate* any purported delegation of authority from the Attorney General to immigration judges in cases involving persons convicted of the offenses identified by 8 U.S.C. § 1227(a)(4)(A).") (court's emphasis). That court also rejected the exact ultra vires argument Petitioner makes in this petition. *See id*. at* 2. Moreover, none of the cases cited by the Petitioner demonstrate that Congress intended his preferred reading of 8 U.S.C § 1226(a) and 8 C.F.R. § 1003.19(h)(2)(i)(C). *See* ECF No. 1 at 18-19.[7]

Nor can Petitioner rely on *Torosyan v. Nielsen*, 2018 WL 5784708 (C.D. Cal. 2018), to support his claim that section 1003.19(h)(2)(i)(C) improperly renders his detention mandatory. The *Torosyan* court appears to have misunderstood the operation of section 1003.19(h)(2)(i)(C), noting that "[u]nder subparagraph (h)(2)(i)(C) of the regulation, Respondents must detain without bond any aliens convicted of a crime listed in § 1227(a)(4) of the INA [sic]." 2018 WL 5784708,

[7] At best, the cases Petitioner cites relate to other decisions by courts, outside of this District, relating to the agency's usage of the automatic stay provision of 8 C.F.R. § 1003.19(i)—which is not at issue in this case.

at *7.[8] This is incorrect. Nothing in the regulation mandates that ICE detain Petitioner because he is described in section 1227(a)(4). It merely precludes an immigration judge from redetermining ICE's bond decision. 8 C.F.R. § 1003.19(h)(2)(i)(C). Petitioner may continue to seek release from ICE and may seek a determination from an immigration judge that he is not properly subject to section 1003.19(h)(2)(i)(C). Those forms of relief are not available to aliens subject to mandatory detention under section 1226(c). *See generally*, 8 U.S.C. § 1226(c).

Based on the foregoing, this Court should find that Petitioner has not met his burden to show that his detention is unlawful under the INA or 8 C.F.R. § 1003.19(h)(2)(i)(C). As such, Count I should be denied.

**C. Petitioner's Detention does not Offend the Constitution.**

Petitioner's claim that his detention is unconstitutional is unsupported and without merit as the Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore,* 538 U.S. at 523 (2003); *Wong Wing v. U.S.* 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character.").

Here, Petitioner is detained for the limited purpose of removal proceedings and had the opportunity to contest such detention at a bond hearing. As such, per Supreme Court precedent, his detention does not violate the Constitution. *See Wong Wing,* 163 U.S. at 235 ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid.").

---

[8] Respondents also disagree with the decision in *Boulos v. Director of U.S DHS ICE ERO Miami Field Office, et. al,* 2026 WL 898838, at *5 (S.D. Fla. Apr. 2, 2026) (relying on *Torosyan*).

To ensure an alien's detention under Section 1226(a) comported with the Fifth Amendment's Due Process Clause, the First Circuit in *Hernandez-Lara v. Lyons* held that the government must bear the burden of proof at a bond hearing before an IJ. 10 F.4th 19, 39-41 (1st Cir. 2021). But the First Circuit cast no aspersion as to the constitutionality of detention of aliens under § 1226(a) by ICE generally and instead recognized that the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate.") (cleaned up).

Here, there is no dispute that Petitioner is detained for the limited purpose of removal proceedings where he had the opportunity of a bond hearing and can pursue relief from removal. His detention is not indefinite; it will end upon an order of release from an IJ or upon the conclusion of his proceedings. As another session of this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration.").

Petitioner asks this Court to implore the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) analysis. ECF No. 1, ¶¶ 60-68. Petitioner is correct that the First Circuit utilized the *Mathews* framework in *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-28 (1st Cir. 2021) to evaluate a different procedural due process question regarding the proper allocation of the burden of proof at a bond hearing for an individual detained under the discretionary detention statute, 8 U.S.C. § 1226(a). But, the First Circuit stressed the differences between discretionary Section 1226(a) detention versus mandatory Section 1226(c). *Id.* at 35 (in upholding the constitutionality of Section 1226(c)'s mandatory detention, the Supreme Court in *Demore* explained that Section 1226(c) "specifically applies to a class of noncitizens who had already been convicted (beyond a reasonable double) of

committing certain crimes."); *id.* at 36 ("Unlike [S]ection 1226(c), [S]ection 1226(a) applies to a wide swath of noncitizens, many of whom … have no criminal record at all."). As such, simply because the First Circuit utilized the *Mathews* test to determine that the Government bore the burden of proof in a Section 1226(a) bond hearing, where 8 C.F.R. § 1003.19(h)(2)(i)(C) was never at issue, does not mean that this Court should review Petitioner's detention per that very regulation under this same test.

Even if this Court were to apply the *Mathews* balancing test, the result would be the same: the balance of these three factors leads to the conclusion that Petitioner's detention has not violated due process. In *Mathews*, the Supreme Court relied on three factors in assessing the due process claim at issue: (1) the private interest at stake; (2) the risk of an erroneous deprivation of such interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest. 424 U.S. at 335.

As to the first factor, certainly, Petitioner has an interest in avoiding detention, but a criminal alien's interest is lessened by the fact that "detention pending a determination of removability" is inherently temporary and has an "obvious termination point." *Demore*, 538 U.S. at 529. Further, Petitioner's liberty interest is diminished because he is a criminal alien who has been convicted beyond a reasonable doubt of an underlying criminal offense that has rendered him removable from the United States. As the Supreme Court explained in *Demore*, "[i]n the exercise of its broad powers over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *See also Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1206 (9th Cir. 2022) ("The recognized liberty interests of U.S. citizens and aliens are not coextensive."). Petitioner cites to his familial ties and effects of his detention on his family, the hypothesized effects of his detention on his removal proceedings, and the conditions of his

confinement. ECF No. 1, 62. But, Petitioner overlooks that he received the process of a bond hearing by the Immigration Judge, has been in removal proceedings for four years, and has another bond hearing scheduled on April 27, 2026. *See id*. at 1-3, *see also* Exhibit 4.

Nor can Petitioner prevail on the second *Matthews* factor, the risk of an erroneous deprivation of the private interest at stake. The immigration judge's inability to review ICE's decision to deny bond because Petitioner is subject to 8 C.F.R § 1003.19(h)(2)(i)(C) "is subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 ("These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'"); *see* supra Section A.2 (describing ability to challenge application of 8 C.F.R § 1003.19(h)(2)(i)(C) before an immigration judge).

Finally, Petitioner cannot overcome the third *Mathews* factor, the government's interest in detaining him. As a general matter, the Supreme Court has long held that when addressing the Government's interest in the immigration context, and in immigration enforcement in particular, the Government's interest is at its zenith. *See Flores*, 507 U.S. at 305 ("Over no conceivable subject is the legislative power of Congress more complete."). The Government has an obvious interest in "protecting the public from dangerous criminal aliens." *Demore,* 538 U.S. at 515. Through detention, the Government additionally seeks to "increase[e] the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528; *see Nken v. Holder*, 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable . . . permits and prolongs a continuing violation of United States law.") (quotations and alteration omitted); *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022) ("Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest.").

The First Circuit has acknowledged the Government's important interests in immigration detention and execution of removal orders. *See Hernandez-Lara*, 10 F.4th at 32 ("The prompt execution of removal orders is a legitimate governmental interest . . . which detention may facilitate."). As the Ninth Circuit recently explained, this interest "is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Rodriguez Diaz*, 53 F.4th at 1208; *see Miranda*, 34 F.4th at 364 ("Importantly, during the deportation process, that government interest includes detention.").

As Petitioner acknowledges, he was convicted of conspiracy to violate the Arms Export Control Act ("AECA"). ECF No. 1-3. Although these crimes do not lead to mandatory detention under Section 1226(c), Congress singled them out as security-related deportability grounds that include violations "relating to espionage or sabotage or to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information." 8 U.S.C. § 1227(a)(4)(A)(i).

Therefore, Petitioner has not shown that his detention violates the Due Process Clause of the Constitution and Count II should be denied.

**D. Any Claim Regarding Petitioner's Arrest by ICE is not properly before this Court.**

Petitioner's remaining claims about his arrest and request for declaratory relief are not properly before the Court. Petitioner alleges many facts, which do not pertain to the dispositive question – the legality of his detention, including submitting a portion of the dash camera footage of his encounter to suggest impropriety over his arrest by ICE. *See e.g*, ECF No. 1, ¶¶ 47-50. However, Respondents aver that any challenge to the legality of his arrest, is not properly brought via a habeas petition, and may be brought via a motion to suppress in Immigration Court. *See INS*

*v. Lopez-Mendoza,* 468 U.S. 1032, 1050-51 (1984) (explaining that motions to suppress may be available in immigration proceedings for "egregious violations of the Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained"); *see also Aguilar v. U.S. Immigr. & Customs Enf't Chicago Field Off.*, 346 F. Supp. 3d 1174, 1189 (N.D. Ill. 2018) (no Fourth Amendment violation in situation where ICE detainee could challenge arrest before immigration court); *Arias v. Rogers*, 676 F.2d 1139, 1143 (7th Cir. 1982) (no constitutional infirmity with immigration arrest because detainees could "could avail themselves of the administrative remedies" available to them to contest detention).

District courts routinely hold that even assuming a Fourth Amendment violation occurred when a habeas petitioner was arrested by ICE, a habeas action is not the proper means to seek a remedy and release is not an appropriate remedy because an individual's identity and their immigration status cannot be suppressed. *See, e.g.*, *H.N. v. Warden, Stewart Det. Ctr.*, No. 7:21-CV-59-HL-MSH, 2021 WL 4203232, at *5 (M.D. Ga. Sept. 15, 2021) (explaining that "even if the Court accepted Petitioner's argument that his initial detention was somehow unlawful, he is still not entitled to habeas relief"); *Jorge S. v. Sec'y of Homeland Sec.*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332717, at *4 (D. Minn. Nov. 15, 2018), *report and recommendation adopted*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332507 (D. Minn. Dec. 4, 2018); *Amezcua-Gonzalez v. Lobato*, No. C16-979-RAJ-JPD, 2016 WL 6892934, at *2 (W.D. Wash. Oct. 6, 2016), *report and recommendation adopted sub nom. Amezcua–Gonzalez v. Lobato*, No. C16-979-RAJ, 2016 WL 6892547 (W.D. Wash. Nov. 22, 2016) (finding that "even if petitioner's arrest amounts to an egregious Fourth Amendment violation, he is not entitled to habeas relief, and his petition should be denied").

Petitioner's request for declaratory relief is also unavailing. Petitioner asks this Court to declare that "the regulation is ultra vires and unconstitutional as applied to him." ECF No. 1, ¶ 78. Generally, Article III of the U.S. Constitution and the Declaratory Judgment Act ("DJA") allow district courts to grant declaratory relief, but this authority is limited to cases of "actual controversy." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 638, 645-646 (1st Cir. 2019); U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 2201. However, the concurring opinion in the Supreme Court's decision in *Jennings v. Rodriguez*, recounted the Court's history of rejecting declaratory relief claims where the proper remedy is relief through a habeas petition. 583 U.S. 281, 325 (2018) ("[The aliens'] suit for declaratory and injunctive relief, in sum, is not a habeas petition. The Suspension Clause protects '[t]he Privilege of the Writ of Habeas Corpus,' not requests for injunctive relief.").[9] Also, as discussed above, Petitioner's constitutional claims fail, and thus he would not merit such a declaration from this Court if it could be afforded.

[9] Immigration law has long drawn a distinction between the declaratory and injunctive relief that respondents sought here and habeas relief. In *Heikkila,* for instance, this Court distinguished habeas relief from "injunctions, declaratory judgments and other types of relief" that "courts ha [d] consistently rejected" in immigration cases. 345 U.S., at 230, 73 S.Ct. 603.

The Court rejected the alien's request for "injunctive and declaratory relief" because Congress had authorized courts to grant relief only in habeas proceedings. *Id.,* at 230, 237, 73 S.Ct. 603. We reaffirmed this distinction in *St. Cyr,* where we noted that the 1961 Immigration and Nationality Act, 75 Stat. 650, withdrew the district courts' "authority to grant declaratory and injunctive relief," but not habeas relief. 533 U.S., at 309–310, 121 S.Ct. 2271; *see also Shaughnessy v. Pedreiro,* 349 U.S. 48, 49, 52–53, 75 S.Ct. 591, 99 L.Ed. 868 (1955) (holding that the Administrative Procedure Act, which authorizes courts to grant declaratory and injunctive relief, authorized "judicial review of deportation orders *other than by habeas corpus* " (emphasis added)). And Congress has confirmed this distinction in its immigration statutes by allowing one form of relief, but not the other, in particular circumstances. *Compare*, *e.g.,* § 1252(e)(1) (prohibiting courts from granting "declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)") with § 1252(e)(2) (allowing "[j]udicial review ... in habeas corpus proceedings" of particular "determination [s] made under section 1225(b)(1)").

## CONCLUSION

For the above reasons, Petitioner's assertion of unlawful detention in violation of the statute and Constitution fails. As such, this Court should deny his plea for release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: April 22, 2026

*/s/ Erica McMahon*
ERICA MCMAHON
Special Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3271
Email: Erica.McMahon@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: April 22, 2026 By: * /s/ Erica McMahon*
ERICA MCMAHON
Special Assistant United States Attorney